(No. 37046.—

ELECTRO-MOTIVE DIVISION, GENERAL MOTORS CORPORATION, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(MARY MAKOWSKI, Defendant in Error.)

*Opinion filed September 28, 1962.*

POPE, BALLARD, URIELL, KENNEDY, SHEPARD & FOWLE, of Chicago, (LEWIS J. WEST and THOMAS D. NYHAN, of counsel,) for plaintiff in error.

FRANCIS M. DISCIPIO, of Chicago, for defendant in error.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The superior court of Cook County affirmed an award of the Industrial Commission to the claimant, Mary Makowski, for a head injury alleged to have been sustained in the course of her employment by the Electro-Motive Division of General Motors Corporation. We allowed the employer's petition for writ of error.

The dispute between the parties is factual, and it falls within a narrow range. The claimant was an employee. She fell while she was at work and was taken to the plant medical center where she was treated by a company nurse and doctor. The doctor did not testify, but the nurse did. She stated that there was some blood on the back of the claimant's head from an abrasion about two inches long and one inch wide, which she cleansed and to which she applied medicine. No bandage was required. Because the nurse testified that there was "slight bleeding," "not flowing blood, it was dry blood," the employer characterizes the abrasion as one of "unknown cause and age." The record by no means supports this characterization.

According to the claimant she was unconscious for approximately three hours. The nurse was unable to say whether she was conscious or not when she was brought in but said that she did not talk for at least five or ten minutes. She then told the nurse that she didn't know what had happened to her. She remained in the medical department about four hours, and was then taken home by a plant guard who summoned a neighbor to help her because she lived alone. Four days later she was taken to the hospital at the direction of her family physician. He did not testify, but the hospital records show that he diagnosed her condition as "concussion; possible disc pathology." There were subsequent hospitalizations, and numerous medical examinations. The medical experts were not in agreement but there was sufficient evidence to support the Commission's conclusion

that the claimant was permanently incapacitated as a result of her fall.

The dispute thus narrows to a consideration of the cause of the claimant's fall. Her position is that she fell because she slipped on some oil on the floor. The employer's position is that her fall was not caused by the condition of the floor but by a dizzy spell, or "blackout" which was unrelated to her employment.

The claimant worked in a large room with many other women who did the same type of work, which involved packaging small parts. Each woman worked at a separate table. The tables were arranged in rows, facing each other, and there was a center aisle between the rows of tables. The parts were brought to each woman's table on skids and the workers took them off one skid, put them on the table and packaged them in boxes, and then put the boxes on a skid behind them. Sometimes there was a small cart to the right of a woman's packing table and at other times there was not.

The claimant described the occurrence in these words:

"Well, I was, after dinner I get ready to pack, sit down in a chair. After while I say well, I drink the water, I get off from the chair, there was a benches and small table, I want to go, pass by the table was a lot of oil and was from the skid, and I slip and fell.

Q. And when you say there was oil there, is that where you stepped when you slipped?

A. We always have oil. Yes, I step on that, something, oil, and I fell."

She said that she fell backward and struck her head and back.

Two women who worked with the claimant were subpoenaed by the employer and testified. One of them, Gertrude Carpenter, said that she heard one of the girls say, "Here comes Mary" and looked up and saw the claimant coming down the aisle, weaving and walking unsteadily.

When the claimant reached her own table, she grasped it, slowly stooped down with her left hand on the table and settled on the floor over on her right side. She was lying partly between the tables and partly in the aisle. The witness ran to her, turned her on her back and put a sweater under her head. She did not remember seeing any oil on the floor, and she saw no bleeding. Smelling salts were applied, and the claimant's eyelashes blinked, but she did not open her eyes. She was placed on a stretcher and carried out of the packing department.

Vesta Stutzman, the other co-worker, testified that she saw Mary coming down the aisle and that she appeared to be upset, was crying and was pale and shaky. When she reached her table, she walked in and with both hands took hold of a work cart that was there and slumped down slowly. She testified that she applied the smelling salts to the claimant and that although she did not respond at first, after a while she opened her eyes. On direct examination she testified that she did not notice any oil in the area where the claimant was lying. On cross-examination she said that she had not gone out of her way to look for oil, and that she could not swear that there was or was not oil on the floor. Both women testified that although the claimant appeared to be in distress as she walked 50 to 75 feet down the aisle, no one spoke to her or went to her assistance:

The claimant testified that although she was crying when she walked down the aisle before lunch, she had been working at her table for 20 minutes or half an hour after lunch, or "dinner," before she started for a drink of water and fell. The other two employees testified that it was after lunch when the claimant walked unsteadily down the aisle and fell when she reached her table.

Apart from the testimony of the claimant and her two co-workers, there is no direct evidence as to the cause of her fall. The claimant was covered under group Blue Cross-Blue Shield policies, to the cost of which the employer con-

tributed. Certain forms were received in evidence, primarily to show the amount of hospital and medical bills that had been paid, and also, over objection, for whatever other evidential value they might have. The employer relies upon them to show that the claimant's fall was not related to her employment.

Three of the forms were from Blue Cross. They dealt with the claimant's admissions to the hospital on September 14, 1957, November 4, 1957, and March 6, 1958. In each there was a section which sought information as to whether or not an accident or injury was involved. In all three forms this section was left unanswered. None of them was signed by the claimant or her physician, Dr. Dvorak. On the reverse side of the form relating to the September 14 admission, there was a question which asked "Is this a W/C case?" The answer was "No," but again this form was not signed by the claimant or her doctor. These forms were not admissible to show the cause of the claimant's fall. On September 30, 1957, Dr. Dvorak filled out and signed a "Physician's Service Report" sent to him by Blue Shield. This report referred to his initial treatment of the claimant after the accident. Dr. Dvorak replied in the negative to the question "Is this a Workmen's Compensation Case?" This hearsay conclusion as to the ultimate issue was also inadmissible to show the cause of the fall.

One of the forms, however, contained a statement by the claimant that was admissible. On October 21, Mrs. Makowski herself answered a letter sent to her from Blue Cross-Blue Shield which asked, with reference to the September 14, 1957, hospitalization, "Was the condition which required hospital care caused by your employment?" She checked the "No" square. In addition, Dr. Peter Cascino, a neurologist, was called in as a consultant by Dr. Dvorak in connection with the claimant's hospitalization in March of 1958. He was subpoenaed as a witness by the employer, and testified that the claimant's condition was due to cerebral arteriosclerosis.

His handwritten entry in the hospital record, contemporaneously made, contains the following recital of the history of her condition given to him by the claimant: "* * * severe headache settling over vertex, neck, frontal areas. Also associated blackout spells. She actually fell 6 months ago and bruised her head. This occurred at work. Dizziness prevalent. Memory is not good. She claims she is losing it. Blackouts are becoming worse and more frequent." His testimony made it clear that he understood the claimant to state that her fall at work was due to a blackout spell.

The responsibility of this court with respect to a factual issue of the kind here involved is to determine whether or not the decision of the Commission is contrary to the manifest weight of the evidence, (see, *e.g., Prince* v. *Industrial Com.* 15 Ill.2d 607,) and while we have always been reluctant to disturb an award of the Commission that has been confirmed upon judicial review, we can not abdicate that responsibility. If the plaintiff's fall resulted from a cause unconnected with her employment, she is not entitled to recover. The burden of establishing that her fall was connected with her employment rested upon her. To sustain that burden she relies entirely upon her own testimony that she fell because she slipped on oil that was on the floor. Standing alone, that testimony would support a recovery. But it does not stand alone. It is contradicted by her statement to the nurse, immediately after the occurrence, that she did not know what had happened, as well as by her statement to Blue Cross that her injury was not caused by her employment. The record shows that she was not unfamiliar with workmen's compensation claims. In her statement to Dr. Cascino she associated her fall with her other blackout spells, and did not attribute it to any different cause. The testimony of her co-workers is consistent with her own statement to Dr. Cascino, and it is not consistent with a fall caused by a slippery floor.

After a careful consideration of the record we are of the

opinion that the award of the Commission was contrary to the manifest weight of the evidence. The judgment of the superior court of Cook County is reversed and the award of the Industrial Commission is set aside.

*Judgment reversed and award set aside.*