(No. 40581.—

HANNIBAL, INC., *et al.,* Appellants, *vs.* THE INDUSTRIAL
COMMISSION *et al.*—(ANTHONY J. HANNIBAL, Appel-
lee.)

*Opinion filed November 30, 1967.*

KLOHR, BRAUN, LYNCH & SMITH, of Chicago, (MARK
A. BRAUN, of counsel,) for appellants.

HACKBERT, ROOKS, PITTS, FULLAGER & POUST, of Chicago, (DOUGLAS F. STEVENSON and GEORGE GESSLER, of counsel,) for appellee.

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

In proceedings before an arbitrator and the Industrial Commission the claimant, Anthony J. Hannibal, was awarded compensation for injuries, and granted reimbursement for medical expenses in the amount of $6,114.77. On review the circuit court of Cook County affirmed except for reversing an award of $1700 for reimbursement for hospitalization costs at Alexian Brothers Hospital. The employer appealed, contending that the claimant's injuries did not arise out of or in the course of his employment. Claimant cross-appealed challenging the circuit court's refusal to allow the reimbursement for hospitalization.

The testimony of the claimant, both before the arbitrator and the Commission, contains many significant conflicts with that testimony offered by his own witnesses. However, it appears that the claimant was 56 years of age at the time of his accident and was in the furniture repair business as president of the respondent company, Hannibal, Inc. There were 100 shares of stock in the company with claimant and another employee each owning one share and claimant's mother owned the remaining 98 shares. The plant was normally in operation from 8 A.M. to 4:30 P.M. with only a night watchman present during the remaining hours. One watchman worked from 4 P.M. until midnight; another worked from midnight to 8 A.M.

On the evening of November 3, 1964, the claimant left the factory at approximately 5 P.M. and took the elevated train into the Chicago Loop. He returned to the factory sometime before 1:30 A.M. the following morning and, while going into the boiler room in the basement, fell down. A night watchman heard him scream and, finding the claim-

ant in the basement, helped him to a couch and gave him a drink of whiskey from a bottle in claimant's desk. The claimant was later taken to the hospital.

It is fundamental to every claim for an award under the Workmen's Compensation Act that claimant has the burden to prove by a preponderance of credible evidence the elements of his claim, particularly the prerequisite that the injury complained of arose out of and in the course of his employment. (*Corn Products Refining Co.* v. *Industrial Com.,* 6 Ill.2d 439.) The fact that an employee is at his place of employment when he is injured does not in itself justify recovery. There must be a further showing that the injury was due to some cause connected with, or incidental to, the employment, rather than a cause completely unrelated to the employment. *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326.

It is the position of the respondent company that the claimant has proved neither that the injury arose "in the course of" nor "out of" his employment. While the phrase "in the course of" employment relates to the time, place and circumstances of the injury, the phrase "arising out of" the employment is used to refer to the necessary causal connection between the injury and the employment. (*Rysdon Products Co.* v. *Industrial Com.*) A careful examination of the record leads us to conclude that the claimant failed to produce substantial credible evidence that would justify an award under the Workmen's Compensation Act.

The basis for our conclusion is our finding that the evidence fails to prove that claimant was in the course of his employment when he sustained his injury. According to his own testimony his duties as president of the respondent company consisted of office work and overseeing work performed by the men in the factory. He was doing neither on the night in question. His sole explanation for his presence in the factory some eight hours after he had left for the day, in fact, is that he was "inspecting the basement."

His recollection of the events surrounding that "inspection", as well as the event which occurred immediately after the injury, however, is inconsistent with other testimony of his own witnesses concerning these events. The claimant testified that the hours between his 5 P.M. departure from the plant and his return later in the evening were spent having dinner and at a movie, but he could not with certainty state where he had dined and had absolutely no recollection of the movie he had seen. Before the arbitrator claimant stated that he returned to the plant about 11 or 12 P.M. Before the Commission, it was established that the time was closer to 1 A.M. He stated to the arbitrator that he fell approximately 15 to 20 minutes after he returned to the plant and that he was found by a night watchman, Jim Noble. On review, however, it was established that Jim Noble had gone off duty at midnight and that the claimant was, in fact, discovered by the second night watchman, Alex Wolfe. The claimant further stated that the watchman helped him to the couch where he remained for approximately one hour, after which he was taken by Bernard Mayer to the Martha Washington Hospital. This would have been on the morning of November 4, 1964. The records of the Martha Washington Hospital establish that the claimant was not admitted there until 9:15 A.M. on November 5. He was unable to explain the reason for this apparent "mistake" on the hospital records.

The night watchman, Alex Wolfe, testified for claimant before the Commission that he discovered the claimant in the boiler room at approximately 1:30 A.M. and that, after helping him to the couch, he returned to his duties. He did not inform anyone about the claimant's condition because "he told me not to, that he would be okay until morning." Wolfe admitted, however, that he had previously given a statement to an investigator and court reporter to the effect that after discovering the claimant in the basement he had called Mayer about 1:30 A.M. and that Mayer had come

and removed the claimant from the basement at approximately 2 A.M. Wolfe also stated that he had helped carry claimant out of Mayer's car. Mayer denied that he had been called by Wolfe or that the claimant had been removed from the premises before 11:00 A.M. the following day. Wolfe later admitted to the Commission that he must have been lying when he gave his earlier statement to the investigator.

Mayer stated that he came to work about 8 A.M. on November 4, at which time a co-employee informed him that the claimant had been injured the night before. Mayer went downstairs and found claimant lying on the couch. They had a short conversation in which claimant told him he had fallen into a pit in the boiler room. After attempting to walk claimant returned to the couch and evidently remained there until 11 A.M. when he was taken to the Washingtonian Home, a home primarily used to treat alcorolics. Mayer further testified that when he entered the basement on the morning of November 4, he noticed that the claimant had alcohol on his breath. When asked whether this could have been caused by the drink of whiskey claimant had been given by the night watchman earlier that morning, Mayer replied that it smelled more as though the claimant had had four or five drinks. In any event, Mayer feared that this smell of alcohol would prevent claimant from being admitted to a regular hospital and, consequently, he was taken to the Washingtonian Home where, Mayer testified, claimant had been treated for alcoholism several times in the past. The records of the Washingtonian Home show that the claimant was registered there at approximately 12 noon on November 4. Claimant's personal history sheet at the Home reveals that "patient states that he was drinking yesterday and fell down." The records further show that claimant remained in the Washingtonian Home until the morning of November 5 at which time he was admitted at 9:15 to the Martha Washington Hospital

for treatment of a fractured hip. It is thus apparent that, among the other inconsistencies, claimant apparently failed to remember his admission and stay in the Washingtonian Home altogether. He attempts to explain this omission by claiming that he was in shock as a result of his accident. This is not borne out by the record. The conversation with the night watchman in which he stated that he was alright and his conversation the next morning with Mayer give no indication that he was in such shock that he could not recall what transpired.

As we stated in *Electro-Motive Division, G.M.C.,* v. *Industrial Com.,* 25 Ill.2d 467, at 472: "The responsibility of this court with respect to a factual issue of the kind here involved is to determine whether or not the decision of the Commission is contrary to the manifest weight of the evidence, \* \* \* while we have always been reluctant to disturb an award of the Commission that has been confirmed upon judicial review, we can not abdicate that responsibility. If the plaintiff's fall resulted from a cause unconnected with her employment, she is not entitled to recover. The burden of establishing that her fall was connected with her employment rested upon her."

Totally aside from the inconsistencies which we feel greatly weaken claimant's testimony, we note the scarcity of evidence that claimant was performing any assigned, customary, or approved duty when he appeared on the premises of the factory at one o'clock in the morning. Although claimant testified that he had made such nocturnal visits previously, at no time does he suggest that these visits occurred at such an early hour. We note further that the only evidence offered to substantiate the claim that these visits had occurred in the past was the testimony of the night watchman, Alex Wolfe. Wolfe's testimony, however, was only to the effect that the claimant had made such visits on other "evenings." The effect of this corroboration is weakened by the fact that it came after Wolfe had twice

previously denied that the claimant had ever visited the factory after normal working hours.

Taking into consideration claimant's vague explanation of his presence in the factory at one o'clock in the morning, the lack of any proof that such early morning visits were related to his duties as president of the respondent company, and the striking inconsistencies which occur throughout the record, we are of the opinion that the claimant has failed to establish by substantial credible evidence that his injury arose out of and in the course of his employment and conclude that the decision of the Industrial Commission was against the manifest weight of the evidence. Because of our determination we find it unnecessary to consider claimant's cross-appeal.

Accordingly, the decision of the circuit court of Cook County affirming the decision of the Industrial Commission is reversed and the award is set aside.

*Judgment reversed; award set aside.*