(No. 41069.—

AVIS HOTEL et al., Appellees, vs. THE INDUSTRIAL COMMISSION et al.—(Mabel Hill, Appellant.)

*Opinion filed Sept. 24, 1968.—Rehearing denied Nov. 21, 1968.*

JORDAN TEPLITZ, of Chicago, (EDWARD A. BERMAN, of counsel,) for appellant.

ANGERSTEIN & ANGERSTEIN, of Chicago, (CHARLES WOLFF and GEORGE W. ANGERSTEIN, of counsel,) for appellees.

Mr. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County reversing the decision of the Industrial Commission awarding compensation to the applicant, Mabel Hill, for the fatal heart attack sustained by her husband, Leroy Hill, on the basis that the award was against the manifest weight of the evidence.

The decedent, age 39, was employed as a houseman at the Avis Hotel. His normal course of duties, which had not varied substantially during his four years of employment, entailed bringing linen to the maids, carrying out trash, vacuuming the carpets in the hallways and on the stairs between the two floors of the hotel, servicing four rooms in a building located a block away, and cleaning the basement and ballroom. Supplying the maids with linen required him, several times daily, to carry 40 or 50 pound loads up thirteen steps from the basement to the first floor and up twelve more stairs between the first and second floors.

On Saturday, January 26, 1963, in near 10 degree weather, Hill arrived for work at 8:00 A.M., cleaned the hotel office, emptied two loads of trash, carried three loads of linen up to the maids on the second floor, cleaned the basement and did some of the vacuuming. He also serviced the rooms in the old building a block away and cleaned the ballroom. At about 12:30 or 1:00 P.M., he complained to his supervisor of chest pains and a headache and was instructed to return home, which he did. Upon his arrival,

his wife observed that he was sweating profusely, his eyes were gloomy and watery and when he breathed he made an unusual sound in his chest and throat. Hill went to bed immediately, where he remained until the next morning. Throughout the day, Sunday, he watched television but his wife noted that he continued to exhibit the unusual breathing sounds. Towards evening, Hill dressed himself and accompanied by his wife, mother-in-law and his wife's aunt, drove five miles in below zero weather to his daughter's apartment. There he played cards for an hour at which time he began to groan very loudly and had difficulty "catching his breath." His wife and relatives drove him to St. George Hospital where a medical history was taken which read, "The patient states he has had a cold for about three days, has sharp pains in his chest since this morning, and shortness of breath since yesterday morning. Also, has a fever." He was examined in the emergency room by a doctor who detected moist rales at the base of both lungs and made a diagnosis of pneumonia while ruling out a myocardial infarction.

Around 12:00 P.M. Hill was taken to Cook County Hospital where he was given an electrocardiogram which showed that he had suffered an acute myocardial infarction. Despite emergency treatment, Hill expired at approximately 5:00 A.M., Monday morning.

An autopsy was performed confirming the cause of death to have been a myocardial infarction. The pathologist's summary stated, in part: "At autopsy the heart showed hypertrophy and dilatation, mainly of the left ventricle with moderate coronary atheromatosis and narrowing of the descending branch of the left coronary artery." Examination of the myocardium revealed a 4 x 5 area in the anteroseptal region which appeared as ischemic. Microscopically in some areas there were foci of old fibrosis, and in some other areas large zones which morphologically revealed signs of very early myocardialnecrosis.

At the hearing before the arbitrator on the claim filed by decedent's widow, the applicant's expert witness, Dr. Nathaniel T. Greenberg, testified in answer to a hypothetical question which included facts describing Hill's work activities and the other events of January 26 and 27, 1963, Hill's medical histories taken at St. George and Cook County hospitals, the medical diagnoses made at those hospitals, the electrocardiograms and the autopsy report. It was his opinion that the cause of death was a myocardial infarction, and that there was a direct causal relationship between decedent's work activity on Saturday and the myocardial infarction. He explained that this heavy physical labor placed an excessive demand on decedent's coronary circulatory system, resulting in an inadequate blood supply to a large segment of the heart muscle tissue causing its deterioration. He further stated that the electrocardiogram showed that the infarction occurred anywhere from 12 to 48 hours previous, and that decedent's symptoms on Sunday were merely coincidental with his rapid deterioration since he had reached a point of imminent demise. The arbitrator awarded compensation.

On review before the commissioner additional testimony was introduced. Two expert witnesses, Dr. Angelo Creticos and Dr. Carl G. Leigh, testified for the respondent with Dr. Greenberg testifying in rebuttal. Respondent's witnesses agreed that the cause of death was a myocardial infarction but asserted there was no causal relationship between decedent's work activities and the infarct. Dr. Creticos stated that the infarct occurred Sunday evening, basing his opinion on the autopsy's finding that the myocardium showed very early deterioration. He admitted that the onset of the heart failure most likely occurred several days prior to January 26 because it would take this length of time to accumulate the amount of congestion found in decedent's lungs. Dr. Carl Leigh stated that current medical literature espouses the view that there is no causal relation-

ship between one's occupation or physical activity and the occurrence of a myocardial infarction. He likewise concluded, based on the medical reports, the subjective complaints of decedent, the electrocardiogram and the autopsy report, that decedent's infarction occurred on Sunday.

Dr. Greenberg reaffirmed his statement that a causal relationship existed, asserting that the gross findings of the autopsy were consistent with this opinion. In this regard, he cited certain findings of the autopsy—enlargement of myocardial fibers, the presence of large, bulky nuclei with hyperchromatism and blunting of the myocardial fibers and the infiltration of leukocytes—which are the earliest signs of a myocardial infarction but remain for up to 48 hours after the infarction. The Commission sustained the award of compensation which the circuit court subsequently set aside.

For injuries or death due to a heart attack to be compensable, it must be shown that "some act or phase of the employment was a causative factor" in its occurrence. (*Republic Steel Corp.* v. *Industrial Com.*, 26 Ill.2d 32, 45.) The determination of disputed questions of fact, including one of causal connection, is primarily a function of the Industrial Commission, and its findings will not be disturbed on review unless against the manifest weight of the evidence, regardless of how the court would have held had it been the trier of fact. (*Gould National Batteries, Inc.* v. *Industrial Com.*, 34 Ill.2d 151, 158.) Where the evidence concerning causal connection is conflicting, or of such a nature that different inferences may be drawn, it is for the Commission to determine where the preponderance lies. Of course, if there is no substantial evidence to support an award, the court must set it aside. *Mechanics Universal Joint Div., Borg Warner Corp.* v. *Industrial Com.*, 21 Ill.2d 535, 538.

In the instant case, there was a divergence of medical

testimony as to whether a causal connection existed between decedent's work-related activities and his heart attack; that is, whether these activities were a causative factor in hastening his death. From a careful examination of the record, we cannot say that the Commission could not legitimately infer such a causal relationship, despite the time interval between decedent's last work day and his demise. Accordingly, the judgment of the circuit court is reversed and the decision of the Commission awarding compensation is reinstated.

*Judgment reversed;*
*award reinstated.*