(No. 41142.-

TRUNKLINE GAS COMPANY, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Charles E. Palmer, Appellant.)

*Opinion filed September 24, 1968.*

HUGH J. MCCARTHY and ROBERT MURPHY, both of Chicago, for appellant.

THOMAS Q. KEEFE, of East St. Louis, for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Clay County reversing an award by the Industrial Commission which had reversed the decision of the arbitrator denying compensation.

Plaintiff, Charles E. Palmer, was a district superintendent for Trunkline Gas Company and was in charge of 100 miles of gas pipe line right-of-way. It was the duty of

him and his crew to care for the regulating stations on his section, to install and clean pipe line, to make tap-ins on the main line, and keep the right-of-way clean.

Panama-Williams Company had a contract to build a gas distribution system for the city of Louisville, Illinois, which, when completed, would tie into the meter or regulatory station of Trunkline. The meter station was built by Trunkline and connected by a pipe line with its main line. This ended Trunkline's responsibility. Panama-Williams, under its contract with the city, was to install an odorizer tank as a part of its contract. Its superintendent, Briggs, had failed to order an odorizer tank, and Palmer attempted to build one to specifications.

There is a dispute as to whether Palmer was solicited to build a tank or whether he volunteered to do so. Briggs testified he agreed to pay Palmer $300 for a tank, which Palmer denied. However, there had been instances when Palmer did work for others and received compensation therefor. With the aid of his foreman, Palmer built the tank and attached flanges, regulators and valves supplied by Briggs. Palmer owned the welding outfit used to construct the tank and hauled it about in his own truck, even though the employer furnished a larger one for his use on the job. He attempted to test the tank with a small pump but could not get enough pressure to ascertain whether the tank would withstand 700 pounds pressure, the requirement under Panama-Williams's contract. On the following Tuesday the tank was filled with water and Palmer tapped it into the main gas line for testing. It sprang a leak and a jet of water destroyed the sight of one of his eyes.

Palmer takes the position that his injury arose out of and in the course of his employment on the theory that his activity tended to advance good will for his employer and that it was the custom of the industry which could reasonably be expected by the employer to be performed. In support he cites *Jewel Tea Co.* v. *Industrial Com.*, 6 Ill.2d 304,

and *Lybrand, Ross Bros. & Montgomery* v. *Industrial Com.*, .36 Ill.2d 410, each of which concerns injuries to employees while engaged in employer sponsored recreation activities. The three factors emphasized in the *Jewel Tea* case were the significant if not tangible benefit of improved employer-employee relations, advertising benefits to the employer and subtle pressures on employees by the employer to participate. Also cited is *Ace Pest Control, Inc.* v. *Industrial Com.*, 32 Ill.2d 386, where the employee stopped to aid a lady motorist and was killed.

The recreation cases are in stark contrast to the situation here. Palmer used scrap pipe of his employer 30 inches in diameter and 36 inches in length to construct the tank, a specialized piece of equipment, neither manufactured nor sold by his employer. It was done on Saturday with his off-duty foreman. He used his own welding equipment and attempted to test his home made contrivance by cutting into a high pressure cross-country pipe line. All of this was done without the knowledge of the employer and, in our opinion, could not have been reasonably expected or foreseen by the employer. Nor is the *Pest Control* case analagous since an employer may reasonably foresee and expect an employee to aid a motorist in distress, but he could not expect an employee to attempt the manufacture and creation of a specialty appliance for a contractor doing work under a contract with a third party.

An accident which causes injury must result from a risk belonging to and connected with that which a workman has to do in fulfilling his contract of service. The employer is not liable where the employee voluntarily exposes himself to a danger which is not incidental to his employment. *General Steel Castings Corp.* v. *Industrial Com.*, 388 Ill. 66; *Roberts & Oake* v. *Industrial Com.*, 378 Ill. 612.

We are of the opinion that this employee volunteered to do a different kind of work on his own and was not in the course of his employment at the time of the injury.

The judgment of the circuit court of Clay County is, accordingly, affirmed.

*Judgment affirmed.*