(No. 45337.— )

PHEOLL MANUFACTURING COMPANY, Appellee, v.
THE INDUSTRIAL COMMISSION *et al.*—(Barbara A.
Pointer, Appellant.)

*Opinion filed April 2, 1973.*

LEWIS P. GAINES and SAMUEL G. JAFFE, of
Chicago, for appellant.

WILLIAMS, DISCIPIO & DeCARLO, of Chicago
(DONALD L. MASON, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the
court:

The issues in this appeal are whether the decision of
the Industrial Commission was contrary to the manifest
weight of the evidence and whether the circuit court of
Cook County erred when it reversed that decision, which
had affirmed an award made by the arbitrator, but which
gave a credit to the employer pursuant to section 8(j) of the
Workmen's Compensation Act. Ill. Rev. Stat. 1969, ch. 48,
par. 138.8(j).

The petitioner, Barbara A. Pointer, was the only
witness on her behalf at the hearing on her claim. She

testified that she had worked steadily for her employer for four years as a sorter of metal parts and had worked overtime almost every Saturday during that period; that she worked the nightshift with ten other girls; that on Saturday, February 8, 1969, while working with three other girls at a table sorting parts, she injured herself; that she had been lifting scoops of metal parts weighing about 15 pounds each, and had lifted about 20 such scoops of metal per hour; that following her "break," as she was bending down scooping the metal and lifting the scoop, she felt a pain down the length of her leg which was so bad she couldn't move; that she then sat down; and that the girls working with her put the metal on the table for her the rest of the day.

The incident occurred on a Saturday when none of the company personnel were present and the company's medical clinic was closed. On the next working day—Monday—she called the company nurse and said, "This is Mrs. Pointer and I won't be in today." When the nurse asked "Why?" she replied, "On Saturday, my back, from work, it was killing me, and I just can't work no more." The nurse then told her to see her family doctor and call to let her know when she would return to work. The petitioner conceded that she had a back problem prior to the incident in question.

She further testified that following this occurrence she was treated by Dr. Morton Simons, who prescribed medication and diathermy for her; that her legs did not improve, and Dr. Simons then referred her to Dr. Maurice Stamler, who performed surgery on her back; and that she returned to work as an inspector after six months, and was then only required to walk from machine to machine. She also stated that presently when she sneezes or coughs she doubles up with pain; that she gets out of bed four or five times a night because of muscle spasms; that at those times her entire left leg "ties up" and she must stand because the pain is so great; that she takes hot baths and pain pills; and

that after eight hours of work the pain goes down from her hips to the bottom of her toes.

Neither of the doctors appeared to testify, but their medical reports were introduced in evidence by agreement of counsel. Dr. Simon's diagnosis of the petitioner's malady was "sacroiliac sprain and sciatic neuritis." Dr. Stamler's report dated March 13, 1969, indicated that the petitioner had been experiencing pain in the back of the thigh for the prior two months; that she developed severe pain one month earlier on a Wednesday, without provocation; that the severe pain lasted only one day but the distress in the thigh and calf, with parathesia in the left foot, remained. He performed surgery for a spinal lesion at the L5-S1 junction of the vertabrae.

A medical report of an examination made by Dr. Robert C. Busch was also admitted in evidence. His diagnosis was that of a herniated disc syndrome in the lumbar area. It was stipulated that had he testified he would have indicated that there was a causal connection between the aggravation of the petitioner's pre-existing condition and the incident which arose out of her employment on February 8, 1969. Another report of a medical examination of the petitioner by Dr. J. V. Walker was also introduced in evidence by agreement. That report generally verified the previous medical findings.

The petitioner further testified that she was unable to pick up her disability benefits; that she sent her husband, who also worked for the company, to the factory personnel manager to get such benefits; and that he brought the forms to her which she signed in blank, with the exception of a checkmark to indicate that she was married, a notation "female," her age, phone number, address, the date she last worked, the date when she became disabled, and the name and address of her attending physician. She then took the forms to Dr. Simons for completion and her husband returned them to the personnel manager. She said that the doctor never

asked her for the history of her accident, but that she did tell him over the phone that it happened at work.

On the petitioner's application for group disability benefits and written across its lines entitled "Cause of Disability," and "If disability due to accident, state when, where, and how it occurred," there appeared the hand-written words of someone other than the petitioner, "see over." On the reverse side of the form the question: "Is condition due to sickness or injury arising out of employment?" was checked "No" with a typed "x." The reverse side was signed by Dr. Simons. The petitioner denied completing the front side of the form with the exception noted, but acknowledged that she signed it. She stated that the personnel manager completed the balance of the face of the form in his handwriting, and the reverse side was not completed by the doctor when she signed it.

On review, the company nurse testified and admitted that she had received a telephone call from the petitioner wherein she reported pain in her leg which occurred in connection with her work.

We have repeatedly held that it is for the Commission to resolve disputed factual questions, including one of causal connection, and that it should determine where the preponderance of the evidence lies. We will not substitute our judgment for that of the Commission unless its findings are contrary to the manifest weight of the evidence. Where the evidence is conflicting, or of such nature that different inferences may be drawn therefrom, it is for the Commission to determine where the preponderance lies. *Avis Hotel v. Industrial Com. (1968), 41 Ill.2d 54, 58; Guardian Electric Mfg. Co. v. Industrial Com. (1968), 40 Ill.2d 518, 521; Shell Oil Co. v. Industrial Com. (1967), 38 Ill.2d 286, 288.*

It is also well established that the testimony of one witness, if corroborated and not impeached, is sufficient to sustain an award by the Industrial Commission. *Deere and Co. v. Industrial Com. (1970), 47 Ill.2d 144.*

Here, the petitioner was the only person who testified on her behalf. Her version of how the accident occurred, which aggravated her pre-existing back condition, was not contradicted in any way by her employer. The company nurse's brief testimony tended to corroborate the petitioner's testimony.

In those cases where this court has denied an award to a petitioner who received nonoccupational group disability insurance benefits, the denial was based on the fact that the petitioner completed the customary application for such benefits by checking the box "no" after the question "Was the condition which required medical care caused by your employment?", and by signing the form. *Rockford Clutch Div., Borg-Warner Corp. v. Industrial Com. (1967), 37 Ill.2d 62, 67-68; Electro-Motive Div., General Motors Corp. v. Industrial Com. (1962), 25 Ill.2d 467, 471; Fisher Body Div., General Motors Corp. v. Industrial Com. (1960), 20 Ill.2d 538, 541.*

In *United States Steel Corp. v. Industrial Com. (1964), 32 Ill.2d 68,* this court reversed the trial court and confirmed the award of the Commission. At pages 73 and 74, the court stated:

"Here, appellant, a Mexican national, who does not read or write English, signed only the forms for nonoccupational disability and hospitalization benefits; his physician's office inserted the impeaching statement as to the nonoccupational origin of his condition. Although these exhibits tend to impeach appellant's testimony as to an accidental injury, we do not believe them to be of such a character as to render his testimony unbelievable. ***

* * *

The credibility of the appellant and his witnesses was the pivot upon which this case necessarily turned, and the Industrial Commission, who heard the examination of these witnesses, both

direct and cross, is charged with the duty, and is obviously in the better position, to judge that credibility."

The petitioner here could not be charged with an admission that the injury did not arise out of her employment in that the part of the form indicating such fact was filled in by her doctor and the company personnel manager, without her authorization. She denied that she completed that part of the form and denied that she instructed the doctor to mark the vital question "no." The employer offered no testimony to contradict the petitioner's statement.

We find therefore that the arbitrator's decision, as affirmed by the Industrial Commission, was correct, and that the circuit court erred in reversing the Industrial Commission. Consequently, we reverse the circuit court and reinstate the award of the Industrial Commission.

*Judgment reversed; award reinstated.*