(No. 45520.

MOSS EQUIPMENT, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Billy G. Goad, Appellee.)

*Opinion filed October 1, 1973.*

262

KLOHR, BRAUN, LYNCH & SMITH, of Chicago (FRANCIS J. LYNCH, of counsel), for appellant.

MURGES and JOHNSON, of Chicago (GEORGE J. MURGES and PHILIP J. McGUIRE, of counsel), for appellee.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

An arbitrator for the Industrial Commission awarded workmen's compensation benefits to the claimant, Billy G. Goad, upon his finding that Goad had sustained accidental injuries arising out of and in the course of his employment

with Moss Equipment, a partnership. The Industrial Commission's decision confirming the arbitrator's award was affirmed on review by the circuit court of Will County. Moss Equipment appeals from that judgment as well as from the Industrial Commission's denial of its motion for refund of the sum of $485 it was required by statute to pay as the probable cost of the certified copy of the record the Commission filed as a return to the writ of *certiorari* in the circuit court.

At the time of his injury on May 22, 1968, the claimant was employed as a salesman by Moss Equipment, which was a partnership owned and operated by Earl Moss and Harlow Jensen. The partnership was engaged in the sale of a wide variety of items, including cars, tractors, trucks, chain saws, farm equipment, large and small lawnmowers, boats and boat trailers. Although the main place of business was situated somewhat east of New Lennox, Illinois, Moss Equipment also leased an abandoned Sinclair station in New Lennox as a secondary site for the display and sale of equipment. This was the claimant's principal place of employment.

At the Sinclair location, the equipment for sale was brought out of the building for display in the morning and put back in at night. Goad testified that he assisted in moving the various items outdoors each morning and that he customarily would start them up to ascertain if they were running correctly. Earl Moss also testified that his salesmen were under instructions to start up equipment to show it to prospective customers.

Goad was employed on a straight salary basis and received no commissions on sales that he made. On occasion, Moss Equipment accepted trade-ins. Although there was testimony that all trade-ins had to be approved by either Moss or Jensen, Goad testified that he sometimes sold equipment and accepted trade-ins without their prior approval. Goad also testified that property of third persons was kept on the lot for sale. However, as to two vehicles

which he made specific reference to, there was testimony by the owners that one was situated on land adjacent to the premises leased to Moss Equipment and was not offered for sale by its salesmen, and that the other had been repossessed by Moss Equipment after a purchaser defaulted on his obligation.

Directly across from the Sinclair site was a Mobile service station operated by Gerald Shreffler, who sometimes did repair work for Moss Equipment. Goad and Shreffler became acquainted during the early part of 1968, and it was at about this time that Goad learned that Shreffler owned a gyrocopter—a one man, cabinless helicopter. The two men discussed a sale or trade involving the gyrocopter, and sometime thereafter, the gyrocopter was moved across the street to the Moss Equipment sales lot.

Shreffler offered to purchase a 1963 Ford owned by Moss Equipment in exchange for the gyrocopter plus cash, but the transaction was never completed. The gyrocopter nevertheless remained on the sales lot and was moved out of the building for display in the morning and put back in at night along with the other equipment. There was testimony that prospective customers viewed the "copter" and made inquiries about it and that some people came onto the sales lot to look at the copter exclusively.

There was a conflict in the testimony as to precisely when the gyrocopter was moved to the sales lot. The claimant testified that it was on the lot for about four or five weeks prior to the date of his injury. On the other hand, there was testimony that it had been there for only about ten days prior to the accident. Although they denied any knowledge of the proposed trade-in for the 1963 Ford, it is undisputed that during the period the gyrocopter was on the lot, both of the owners of Moss Equipment knew it was there. Claimant testified that when Harlow Jensen asked about the gyrocopter, he told Jensen that it belonged to Shreffler and that when Jensen asked

further "What are we going to do about it?", Goad replied that "We is going to sell it or make a deal or trade for a car." Jensen corroborated Goad's testimony in this regard and testified further that he said nothing to Goad about removing the machine from the premises. Earl Moss testified that when he inquired about the gyrocopter and learned that it belonged to Shreffler, he indicated to Goad that it was against their policy to keep it on the premises. However, he testified further in referring to Goad that "I told him to perhaps keep relations on an even keel with our competitor (Shreffler) across the street, that I wouldn't object too strenuously to him, but we should get it off."

The gyrocopter was missing some parts including the gas tank hose and apparently the vertical flight propeller. Nevertheless, the motor was operational, and on May 22, 1968, Goad poured gasoline into the carburetor and attempted to start it up in the doorway of the garage. Although a co-employee of Goad's testified that he advised Goad against trying to start the engine, Goad denied that such advice had been given. After a number of pulls on the propeller, the engine started, and the gyrocopter began to move forward toward the street. Goad injured his arm when he grabbed for a wire to stop the engine. Following the accident, Shreffler removed the gyrocopter from the sales lot.

With respect to the basic issue as to whether the claimant's injury arose out of and in the course of his employment, it is conceded that his injuries were sustained "in the course of" his employment with Moss Equipment. The employer contends, however, that the claimant did not meet his burden of proving that his injury also arose "out of" his employment; *i.e.,* that there was a causal connection between the conditions under which the work was performed and the injury. In support of its argument that the claimant's injury was not compensable because it arose from a risk purely personal to the claimant and

entirely unrelated to his work, the employer has cited a number of cases where compensation was denied for injuries resulting from assaults (*Thurber v. Industrial Com. (1971), 49 Ill.2d 561; State House Inn v. Industrial Com. (1965), 32 Ill.2d 160*), from injuries suffered by employees attempting to repair their own automobiles on the employer's premises (*Fisher Body Division, General Motors Corp. v. Industrial Com. (1968), 40 Ill.2d 514; Mazursky v. Industrial Com. (1936), 364 Ill. 445*), injuries sustained by employees who were engaged in activites outside of their assigned duties and which were not foreseeable in the particular employment situation (*Trunkline Gas Co. v. Industrial Com. (1968), 40 Ill.2d 542; U.S. Industries, Production Machine Division v. Industrial Com. (1968), 40 Ill.2d 469; Mills v. Industrial Com. (1966), 27 Ill.2d 441; Reilly v. Industrial Com. (1946), 394 Ill. 126*), injuries resulting from some condition or activity personal to the employee and not related to his employment (*Board of Trustees of University of Illinois v. Industrial Com. (1969), 44 Ill.2d 207; Williams v. Industrial Com. (1967), 38 Ill.2d 593; Hill-Luthy Co. v. Industrial Com. (1952), 411 Ill. 201; Klug v. Industrial Com. (1943), 381 Ill. 608*), injuries suffered as a consequence of an employee's engaging in activities which were proscribed by his employer (*Peoples Gas Light and Coke Co. v. Industrial Com. (1950), 405 Ill. 73; Kensington Steel Corp. v. Industrial Com. (1944), 385 Ill. 504; Northwestern Yeast Co. v. Industrial Com. (1941), 378 Ill. 195*), and injuries incurred by an employee while embarking on a frolic unrelated to his work (*Winter & Hirsch Loan Co. v. Industrial Com. (1970), 47 Ill.2d 254*). In our opinion, these and the other cases cited by the employer are distinguishable in one respect or another from the case at bar, and it would unduly lengthen this opinion to analyze those distinctions on a case-by-case basis.

It is well settled that it is the province of the Industrial Commission to resolve conflicts in the testi-

mony, draw inferences therefrom and determine where the preponderance of the evidence lies. (*County of Cook v. Industrial Com. (1973), 54 Ill.2d 79; Pheoll Mfg. Co. v. Industrial Com. (1973), 54 Ill.2d 119; Crepps v. Industrial Com. (1949), 402 Ill. 606.*) On review, we will not reject or disregard permissible inferences drawn by the Commission for the reason that different or conflicting inferences might also reasonably be drawn from the same facts (*Parro Construction Corp. v. Industrial Com. (1970), 45 Ill.2d 367; Brewster Motor Co. v. Industrial Com. (1967), 36 Ill.2d 443; Clifford-Jacobs Forging Co. v. Industrial Com. (1960), 19 Ill.2d 236*), nor will we substitute our judgment for that of the Commission unless its findings are against the manifest weight of the evidence. *W.K.I.D. Broadcasting Co. v. Industrial Com. (1969), 42 Ill.2d 236.*

In our opinion, there was sufficient evidence from which an inference could be drawn that at the time of the claimant's injury, the gyrocopter was on the Moss Equipment sales lot for a purpose connected with the employer's business rather than for a purpose purely personal to the claimant. There was testimony by both the claimant and Gerald Shreffler that after the gyrocopter was brought onto the lot, it was the subject of a possible trade-in involving an automobile owned by Moss Equipment. Even if it be assumed that this transaction fell through completely (a fact not definitely established), there was additional evidence from which it could be inferred that Shreffler's gyrocopter remained on the lot for business-related purposes. The testimony of each of the owners could be construed as implicit, if not explicit, to the claimant to keep the gyrocopter on the lot for display and sale. The testimony of Earl Moss indicates one reason therefor; namely, to keep business relations with Shreffler on "an even keel." The additional testimony that the gyrocopter was displayed and was viewed by Moss Equipment's customers as well as others also gives rise to an inference that the gyrocopter may have served as some-

what of a drawing card which attracted members of the public to the lot.

The employer also argues that the claimant's actions in starting up the gyrocopter under the conditions which existed were so foolhardy and dangerous as to remove him from the scope of his employment. Although it is possible that such an inference could be drawn, we believe that the evidence also supports a contrary inference. It is clear that one of the claimant's duties as a salesman was to start up equipment which was on the lot for sale, and we believe that it reasonably could be inferred that his attempt to start the engine of the gyrocopter to see if it would work was an act which was closely related to the accustomed duties of his employment and which readily could be foreseen by his employers. Even though the starting of the gyrocopter may have involved greater risks than those involved in starting the other equipment on the lot, such risks were permitted to exist by the employer, and we cannot say as a matter of law that the claimant's actions were so rash and foolhardy as to require a finding that he had departed from his employment at the time of his injury. Upon consideration of all the evidence and the permissible inferences which could be drawn therefrom, we do not find the award of compensation to be against the manifest weight of the evidence.

In its decision, the Industrial Commission fixed $485 as the probable cost of the record to be filed as a return to the writ of *certiorari* in the circuit court. Moss Equipment advanced said sum under protest and filed a motion before the Commission alleging that there was already in existence an original and copy of the proceedings before the arbitrator and the Commission on review, either of which could be used by the Commission as its return to a writ of *certiorari* rather than requiring a new record to be prepared, and that to require payment for a new record under the circumstances would result in a deprivation of property without due process in contravention of the State

and Federal constitutions. The motion concluded with a prayer for the entry of an order by the Industrial Commission that the existing record of the proceedings on arbitration and review be employed by it as the record to be filed as its return to the writ of *certiorari* and that the sum of $485 be refunded to it less such portions thereof as might be necessary to defray the cost of other documents pertinent to a complete record of proceedings before the Industrial Commission, "the arbitration and review of transcripts excepted." The motion was "rejected" by the Commission and was not ruled upon further by the circuit court on appeal. Nevertheless, we consider the issue to be properly preserved for review.

The provisions of the Workmen's Compensation Act relating to charges for preparation of a record for review are contained in section 38.19(f)(1) of the Act, which reads in pertinent part:

> "The Commission shall not be required to certify the record of their proceedings to the Circuit Court, unless the party commencing the proceedings *** shall pay to the Commission the sum of 60 cents per page of testimony taken before said Commission, and 25 cents per page of all other matters contained in such record ***. It shall be the duty of the Commission upon such payment *** to prepare a true and correct typewritten copy of such testimony and a true and correct copy of all other matters contained in such record and certified to by the Secretary or Assistant Secretary thereof.
>
> In its decision on review the Commission shall determine in each particular case the amount of the probable cost of the record to be filed as a return to the writ of certiorari in that case and no praecipe for a writ of certiorari may be filed and no writ of certiorari shall issue unless the party seeking to review the decision of the Commission shall exhibit to the clerk of the said Circuit Court a receipt showing payment of the sums so determined to the Secretary or Assistant Secretary of the Commission ***." Ill. Rev. Stat. 1969, ch. 48, par. 138.19(f)(1).

Corresponding provisions of the Workmen's Occupational Diseases Act have been recently considered by this court in *Saldana v. Industrial Com. (1972), 53 Ill.2d 222.* In that case, an employee was denied compensation after a hearing before the arbitrator. He paid for the preparation of a transcript of the proceedings before the arbitrator which he filed with the Commission for review. At the hearing on review before the Commission, there was no further evidence taken, and the Commission affirmed the arbitrator. In its decision, the Commission fixed at $600 the probable cost of the record to be filed as a return to a writ of *certiorari.* The employee paid the sum under protest and filed a motion in the circuit court requesting that the costs be returned to him. The motion was allowed, and we affirmed on appeal on the grounds that the statutory provisions pertaining to the preparation of records for review refer only to matters incorporated in the record as a result of the review by the Commission and do not authorize an additional charge for that part of the record made before the arbitrator and filed with the Commission pursuant to a petition to review the findings of the arbitrator.

Under the authority of *Saldana,* it is apparent that to the extent that the sum of $485 paid under protest by the claimant in the case at bar represents a charge for an additional transcript of the proceedings before the arbitrator, the claimant is entitled to a refund. This case involves a further issue not present in *Saldana,* however, in that here there was testimony taken before the Commission as to which a transcript was prepared and filed with the Commission. The cost of preparing the transcript was apparently borne by the employer independently of and in addition to the amount it was required to deposit pursuant to the statutory provisions set forth above. The question thus presented for our decision is whether the statute in question contemplates payment for an additional tran-

script in such instances, or whether a refund is justified even though not specifically provided for by statute.

In our opinion, the statutory provisions now under consideration are intended to insure that the Commission is compensated for its preparation of the transcript of proceedings before the Commission in cases reviewed by the circuit court. We do not believe those provisions contemplate that a party commencing proceedings for review should be burdened with the cost of preparation of a completely new transcript when one has previously been prepared and filed with the Commission. Accordingly, to the extent that the payments required by section 19(f)(1) are not necessary for preparation of a full and complete transcript for review, we think it is entirely consistent with the letter and spirit of the Workmen's Compensation Act that a refund should be made to that party for the sum he has deposited pursuant to statute less any amounts attributable to additional portions of the transcript added by the Commission in compliance with its duty to prepare a true and correct copy of the testimony and all other matters in the record.

The judgment of the circuit court of Will County affirming the Industrial Commission's award of compensation to the claimant is affirmed. However, the cause is remanded to the Commission for reconsideration of the employer's motion for a refund in accordance with the views expressed in this opinion and in the *Saldana* case.

*Affirmed and remanded, with directions.*