AREA TRANSPORTATION COMPANY, Appellant, *v.* THE INDUSTRIAL COMMISSION *et al.* (John Fiedler, Appellee).

First District (Industrial Commission Division)   No. 1—84—377WC

Opinion filed May 10, 1984.

Kane, Doy & Harrington, Ltd., of Chicago (Samuel J. Doy, of counsel), for appellant.

Roddy, Power & Leahy, Ltd., of Chicago (John H. Guill, of counsel), for appellee.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Area Transportation Company (Area) appeals from the judgment of the circuit court of Cook County confirming the decision of the Industrial Commission. The arbitrator found that John Fiedler was an employee of Area and awarded compensation for permanent total disability. On review the Industrial Commission affirmed the arbitrator's award and added further amounts of medical payments. The sole issue is whether Fiedler was an employee of Area under the Workers' Compensation Act at the time he was injured. An additional defendant, Mace Iron Works (Mace), was dismissed by the arbitrator, no argument or contention is made with regard to Mace in this appeal, and in oral argument Area has stipulated to the dismissal of Mace.

Fiedler sustained injuries in an automobile accident on July 29, 1978, while riding in his brother's car after being picked up at the site of a mechanical breakdown of his truck. For two years prior to the accident, Fiedler had worked for Mace, receiving an hourly wage for approximately 35 hours of work weekly as a welder of structural steel and for loading and delivering the product.

In 1977, Fiedler purchased a truck owned by Mace for the hauling of the fabricated steel under a note payable in installments. On January 14, 1977, Fiedler entered into an "Equipment Lease" under which he leased the truck, purchased from Mace, to Area.

The lease recited that Area desired to lease the equipment from the "Independent Contractor," that the vehicle would be under the direction, supervision, and control and operated pursuant to for-hire motor carrier authority of Area under its ICC License, for a period from January 14, 1977, to January 14, 1980.

The lease agreement provided, as material:

"2. [Fiedler] agrees to haul such property as [Area] may require for a series of trips, between various points and places, for a period of one (1) year beginning with date and time shown below and continued thereafter until terminated by the terms of this agreement. Either party may at its option terminate this lease by giving thirty (30) days notice in writing to the other.

3. Costs of Operation. [Fiedler] shall pay all costs of operation which may include, but shall not be limited to, the following: Maintenance, repairs, fuels, lubricants, tires, etc; wages or other remuneration of operators, drivers and helpers; public liability and property damage insurance on the equipment while not being operated in service of [Area] or otherwise; workmen's

compensation, unemployment insurance, Social Security or other similar taxes, insurance or benefits on the operator, drivers and helpers and, in connection therewith, [Fiedler] shall make all payroll, tax or other deductions required by any applicable law or regulation; license registration fees, toll charges, decals, use permits, axle, weight, garoline [*sic*] or other types of taxes, fees or exactions required of or on the equipment or on the use or operation thereof, including all reports connected with such matters, damages to cargo caused by the fault or neglect of [Fiedler], and fines and penalties arising out of the use of said equipment. In the event [Area] is compelled to pay any of [Fiedler's] costs of operations such payment shall be considered an advance to [Fiedler] and is deducted from any monies due or becoming due to [Fiedler]."

It further provided for the transportation of:

"Commodities general within a fifty (50) mile radius of 1939 South 48th Court, Cicero, Illinois and to transport such property to or from any point outside of such authorized area of operation for a shipper or shippers within such area. Also, between the Indiana-Illinois State Line, on the one hand and on the other, points and places in Indiana within the Chicago, Illinois Commercial Zone as defined by the Interstate Commerce Commission on I.M.C.C. 673."

After Fiedler purchased the truck from Mace he continued his work for Mace as a welder. Also, prior to the agreement with Area, Fiedler hauled only for Mace. After the agreement with Area, Fiedler hauled only for Area, which included deliveries from Mace once or twice a week. When Fiedler would make a delivery for Area to a housing project he was to pick up the unused steel he found on the ground near the foundation of the project for Mace and was paid a straight $15 per pickup by Mace, and Area Transportation received nothing from this.

Fiedler testified that he maintained the truck and kept it on Mace property. Area purchased the insurance for the truck and furnished Fiedler with the Interstate Commerce Commission (ICC) numbered decal. Area would pay Fiedler on a weekly basis and would create the freight bill and send it to Mace, which would pay Area every two or three weeks. There was also testimony that Fiedler, before he started trucking for Area, filled out an employment application form provided by Area and used for other employees. A physical examination was required for truck drivers. If Fiedler failed to pass a driving test he would not be allowed to drive for Area; likewise he would not be al-

lowed to drive if there were any "unsavory information" on the employment application. Area's witness testified that this was so the insurance company would maintain the insurance. Area's officer also testified, in the nature of an offer of proof submitted by Fiedler's counsel, that he would terminate the relationship should Fielder violate ICC regulations such as hauling outside the area or hauling unauthorized commodities.

In case of accident Fiedler was instructed to call in to Area. Area's name was on the truck on an adhesive. Area owns no trucks of its own. Area withheld a security deposit of $225-$250 from Fiedler's check to cover any damage to cargoes. Fiedler's truck was only used to deliver steel from or to Mace.

On the morning of the accident, after Fiedler loaded his truck with steel at Mace he punched out there and began his delivery of a load of structural steel. On the way, the drive shaft separated from the transmission. Fiedler called for a tow truck which came, but the tower would not take the truck back to Mace without being paid for the tow; Fiedler went to a gas station and called his brother to come out with money to pick up a part for the truck; they were going to fix it if it could be fixed; they did not make it back to the truck.

I

Area argues that Fiedler was not its employee but rather an independent contractor, principally because, Area says, it did not in fact control Fiedler's method and manner of operation; because Mace would give Fiedler any directions he would receive; and because Fiedler was responsible for all maintenance of the vehicle, all repairs, gas and oil. Area further argues that the equipment lease expresses all of the rights and obligations of the parties and the provision that Fiedler is responsible for furnishing workers' compensation insurance on the truck operator creates the implication that Fiedler can hire other drivers, and is thus not himself an employee.

■ There is no inflexible rule for determining whether an individual is an employee or an independent contractor. (See *Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 80; *Ragler Motor Sales v. Industrial Com.* (1982), 93 Ill. 2d 66, 71; *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 254.) Where elements of both the relationship of employer and of independent contractor are present, the Industrial Commission alone is empowered to draw the inferences either way and its decision as to the weight of the evidence will not be disturbed on review. (*Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106, 108.) A question of law is presented only where no fac-

tual matters are disputed or no conflicting inferences are capable of being drawn from them. *Chicago Transit Authority v. Industrial Com.* (1975), 61 Ill. 2d 78, 83.

Many factors in the relationship of the parties are to be considered, including " '*** the right to control the manner in which the work is done, the method of payment, the right to discharge, *** and the furnishing of tools, materials or equipment ***.' " *(Bauer v. Industrial Com.* (1972), 51 Ill. 2d 169, 171. See also *Clark v. Industrial Com.* (1973), 54 Ill. 2d 311, 314.) The right to control the manner in which the work is done is the most important factor in determining the relationship. *(Globe Cab Co. v. Industrial Com.* (1981), 86 Ill. 2d 354, 362; *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 97-98.) The Illinois Supreme Court has recently attributed increased significance to the nature of the work performed in relationship to the general business of the employer, in support of the theory that where a worker's services form a regular part of the cost of the product it is presumptively within the intended area of the Workers' Compensation Act. See *Ragler Motor Sales v. Industrial Com.* (1982), 93 Ill. 2d 66, 71; *Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 81.

There is, however, no indication in the supreme court rulings to date that control has been supplanted as the principal test for determining whether there is an employment relationship or that of an independent contractor. Rather, the right to control appears to remain the principal although not the exclusive test, with the relationship between the claimant's occupation and the regular business of the employer an additional factor to be considered. *Ragler Motor Sales v. Industrial Com.* (1982), 93 Ill. 2d 66, 71.

The provisions of the equipment lease clearly place the right to control in Area. We agree with Area's argument that the right to control stated in the lease does not of itself establish the employment relationship as a matter of law. (See *Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 81.) In *Wenholdt*, the majority upheld the Commission's decision that the claimant was an independent contractor even though the contract between the tavern owner and a musical band provided that the tavern owner would have complete supervision, direction and control over the services of the musicians, including the details of performance by the leader and members of the band. The court held that this did not create an employer relationship as a matter of law and considered other factors, including the fact that the claimant who was injured was not a party to the contract, that the tavern owner did not, in fact, exercise any control over the claimant, that the band leader had the right to hire and replace, and

thus implicitly fire, the claimant, that the claimant provided his own equipment, was compensated "by the job" as opposed to on a time basis, had no withholding taxes deducted and considered claimant's occupation as a musician as not related to that of the operator of a tavern. *Wenholdt v. Industrial Com.* (1983), 95 Ill. 2d 76, 81.

*Wenholdt,* however, is not controlling under the particular facts of this case. While Fiedler was to be paid on the basis of his hauling trips rather than on a time basis, provided his own equipment, and no withholding taxes were deducted, there is little other similarity between the cases. Area controlled the property to be carried, and the points and places of the trips. Area had direction, supervision and control of the equipment pursuant to its for-hire motor carrier authority under its ICC license. Area assumed responsibility to the public under the ICC regulations and its ICC decal was displayed on the truck. Area was responsible to the public by virtue of ICC regulations. (Ill. Rev. Stat. 1975, ch. 95½, par. 18—309(c); Amended General Order No. 24.) Area furnished the insurance on the truck while it was being operated in its service. Before Fiedler started trucking for Area he filled out an employment application form provided by Area and used by other Area employees. A physical examination was required. If Fiedler failed to pass a driving test or if there was an "unsavory information" on the employment application, he would not have been allowed to drive for Area; and if Fiedler should violate ICC regulations, such as by hauling commodities unauthorized under Area's ICC license, the relationship would have been terminated. Area also provided billing services.

We recognize that there were other factors which were indicative of an independent-contractor relationship. Area owned no equipment of its own but relied upon contracting parties to supply the equipment, storage for the equipment and the operator. Presumably under the lease Fiedler could hire drivers other than himself. Fiedler was to pay all costs of operation, specifically including all maintenance, fuel, tires, lubricants, workers, compensation insurance, withholding tax, licenses and registration fees, toll charges and road taxes. Fiedler was paid for the results of his trips and not for his efforts, in the sense that if no revenues were produced Area would pay no equipment rental fees.

■ However, where reasonable inferences from the facts may be drawn either in favor or against an employment relationship, the award of the Commission must be upheld. *Greenberg v. Industrial Com.* (1961), 23 Ill. 2d 106, 108. See also *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 101; *M.W.M. Trucking Co. v. Indus-*

*trial Com.* (1976), 62 Ill. 2d 245, 255.

In *M.W.M. Trucking Co.*, the claimant entered into an agreement to lease his truck to American Transit Lines, with payment to be determined by the amount of freight handled and with various elements of control by American. On return trips claimant was permitted to "trip lease" to M.W.M. for the single purpose of a return trip. The claimant picked up a load of lumber from M.W.M. in Missouri on a Friday, drove to his home for the weekend in Granite City, and on Monday morning left for Whiting, Indiana, his destination as designated by M.W.M. He was involved in an accident on the way to his destination. The court found that an employer-employee relationship existed between M.W.M. and the claimant, relying substantially on operational control under commerce regulations, and the responsibility of the lessee to the public and shippers. *M.W.M. Trucking Co. v. Industrial Com.* (1976), 62 Ill. 2d 245, 255.

In *Morgan*, the facts that the cab company was in the business of operating a fleet of cabs, with a company image and an interest in the way the vehicles were operated, together with the right to control the area of operation and the right to refuse a cab lease for a variety of reasons, were held to be controlling factors in favor of the employment relationship. This, in spite of the fact that many other factors, including no withholding and no payment of operating expenses by the cab company, were indices of an independent-contractor relationship. *Morgan Cab Co. v. Industrial Com.* (1975), 60 Ill. 2d 92, 101.

The responsibility assumed by Area under the ICC regulations has also been recognized as a substantial factor in considering a party to be an employer. See 1C A. Larson, Workmen's Compensation secs. 43.50 through 43.54 at 8—17 to 8—30 (1982). See also *Du Berry v. Coker Freight Lines* (1959), 274 S.C. 304, 108 S.E.2d 114.

Additionally, if the relationship of Fiedler's work to the regular business of Area is taken into account reasonable inferences could be drawn which would support the Industrial Commission's finding in favor of the employment relationship. Fiedler's work was a regular part of Area's business, which was to furnish trucking services to various industries. The work was continuous rather than a contract for completion of a particular job. Fiedler owned a single truck, in fact, drove it himself as an individual, and thus could not necessarily be expected to carry his own share of the workers' compensation responsibility, even though the contract did so provide.

## II

Alternatively Area argues that if it is conceded for the purpose of

argument that the claimant was an employee during the operation of the vehicle, he also acted as an owner and original contractor in making the arrangements for repair following the breakdown of the vehicle.

It is, of course, possible that an individual may have a dual purpose in the course of a trip. (See *Gmelich v. Industrial Com.* (1980), 81 Ill. 2d 44, 48-49.) In *Gmelich*, it was held that an automobile salesman who traveled in a company-furnished car to visit a friend in the hospital and to take his wife Christmas shopping and who was killed on the return trip had not been involved in an accident arising out of the employment merely because he carried work materials with him and was in the habit of attempting to make a sale at every opportunity and had, in fact, tried to sell a car to a store clerk. The court adopted the test

> " 'when a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of the failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.' " (81 Ill. 2d 44, 48.)

See 1 A. Larson, Workmen's Compensation sec. 18.00, at 4—216 through 4—218 (1982).

■ The evidence that Fiedler was trying to effect towing and repairs on his truck in order to complete the delivery, that at the time of the breakdown the truck was still loaded with the freight, the absence of evidence that the claimant, when he entered his brother's car, was going anywhere other than to the place where his truck was being towed to see if he could fix it and complete his delivery, all appear to reflect business motivations. It would appear that any repairs to the truck which would make it operational so that the load could be delivered would be of benefit to the claimant but would also accrue to the benefit of Area.

*Hannibal, Inc. v. Industrial Com.* (1967), 38 Ill. 2d 473, is cited by Area, but is factually dissimilar. In *Hannibal*, an employee injured in a fall at the business premises long after normal working hours was held not entitled to compensation on evidence that the employee was the president of the company, gave a vague explanation of his unusual presence during an early morning hour and failed to establish

that his duties required his presence; and in addition, gave inconsistent testimony.

We conclude that the decision of the Industrial Commission is not against the manifest weight of the evidence. The judgment of the circuit court of Cook County confirming the decision of the Industrial Commission is affirmed. Mace Iron Works Co. is dismissed as a party.

Affirmed.

McNAMARA, BARRY, WEBBER and KASSERMAN, JJ., concur.